1  Mitch Wallis, CA Bar # 227253
   1286 University Ave #338
2  San Diego, CA 92103
   Telephone: (619) 295-5475
3  mvegan@yahoo.com
   Attorney for Plaintiffs
4

5

6                    United States District Court
7                    Central District of California

8

| | |
|---|---|
| 9  LWCI, LLC, a California Limited Liability Company, Pilot, Inc., a California corporation dba Pilot Automotive, Casa Hernandez, Inc., a California Public Benefit Corporation, Canyon Springs Villa, LLC, a California limited liability company, AED-Copiah, LLC, a Texas limited liability company, BurnFat, Inc. a California corporation, and K8H Ventures,, LLC, a Texas limited liability company,<br><br>                    Plaintiffs,<br><br>          vs.<br><br>David Vargas, an individual, Tiger Eye Capital-Ohlone Tribe Advisory Corp, a California corporation, Ohlone Tribe of Carmel First Settlers of Chino Valley, Inc., a California corporation, Blue Fire Holdings Native American MGT, Inc. a California corporation,<br><br>                    Defendants | Case No.:<br><br>**COMPLAINT**<br>(R.I.C.O. based on predicate acts of Mail Fraud & Wire Fraud), Common Law Fraud, Negligence, Breach of Contract, & Negligent Misrepresentation |

20

21

22                    **JURISDICTION AND VENUE**

23

24  1)    Jurisdiction is based on 18 U.S.C. § 1964(c) (the Federal Racketeer Influenced

25  and Corrupt Organizations Act) and 28 U.S.C § 1331.  Jurisdiction over Plaintiffs'

26  related state and common law claims is based on the doctrine of supplemental

27  jurisdiction 28 U.S.C § 1367.

28

2)   Venue in this District is based on §§ 1391(b)(1)-(2) because Plaintiff's claim arose in this district and because Defendants do business and reside in this district.

3)   Plaintiff LWCI, a California corporation with its principal place of business Livermore, California, is engaged in the business of developing a Hotel project in Livermore, California and paid Defendants an advance fee of $ 105,000 on or about January 13, 2022.   Plaintiff Pilot, Inc., dba Pilot Automotive, a California corporation, is engaged in developing energy storage system alternatives in the Los Angeles area and paid Defendants an advance fee of $ 30,000 plus a demonstration model of its battery storage system valued at about $ 50,000 on or about January 2024.   Plaintiff Casa Hernandez, Inc. is a California Public Benefit corporation engaged in the enterprise of developing affordable housing alternatives for Veterans and is based in the Victorville area and gave Defendants an advance fee of $100,000 on or about November 21, 2022.   Plaintiff Canyon Springs Villa, LLC, a California limited liability company, is developing an apartment complex in Cathedral City, California and gave Defendants an advance fee of $ 250,000 on or about March 17, 2023.   Plaintiff AED-Copiah, LLC, a Texas limited liability company, is developing a plant to convert wood pellets (biomass) into electricity in Mississippi and paid Defendants an advance fee of $ 105,000 on or about January 4, 2022.   Plaintiff BurnFat, Inc., a California corporation (directed by Tien Vo MD), planned to purchase and improve the struggling El Centro community hospital and paid Defendants an advance fee of $ 350,000 on or about January 25, 2023.   Plaintiff K8H

Ventures, LLC, a Texas limited liability company, is developing low-cost housing in Texas and paid Defendants an advance fee of $ 250,000 on or about February 17, 2023.

4)    Defendants are the owners and operators of a business engaged in procuring funding for Plaintiffs' development projects through grants and loans vis-à-vis its special access and relationships to federal funding for native American tribes and tribal organizations and are all based in Rancho Cucamonga, CA, located within this District.

## GENERAL ALLEGATIONS

5)    This action is brought to recover damages suffered by Plaintiffs as a result of Defendants' pattern of criminal practices and illegal enterprise scheme under the Federal RICO Act, 18 U.S.C. § 1964(c), as well as the common law torts of Fraud, Negligence, Negligent Misrepresentation, Breach of Contract, Breach of Covenant of Implied Good faith, and Misrepresentation.

6)    Between 2022 and early 2024, Plaintiffs paid to Defendants advance fees to secure development funding for their respective projects in substantial amounts.  All of the foregoing fees were paid to Defendants on condition that if the funding did not materialize within the agreed upon time frames, 100% of the advance fees would be refunded to Plaintiffs or that Defendants would continue to engage in substantial good-faith efforts to procure funding indefinitely until such funding was obtained.

Defendants never obtained a single dollar of funding for any Plaintiff and have failed to refund any amount or to continue making any efforts therefore.

7)      Defendants are not Native Americans, are not members of any recognized tribe or tribal organization, are not a recognized CDFI or native CDFI, and are not a certified CDE despite their repeated and continuous representations to the contrary. Plaintiffs, who also are not Native Americans, paid substantial advance fees to the Defendants in reliance on their reasonable and good faith belief in the foregoing misrepresentations and would never have paid substantial advance fees otherwise.

8)      At the time of receipt of the advanced fees paid by Plaintiffs, Defendant David Vargas was CEO of the other named Defendant non-profit and for-profit California corporations all of which are working together as co-conspirators, co-actors, co-agents and are intertwined and interconnected on financial, political, promotional and practical levels.

9)      Defendant David Vargas installed his ex-wife and ex step-kids, who are native Americans, as board members and/or officers of his privately held Defendant corporations as a front, to falsely portray his organizations as able to procure Native American grants and loans for humanitarian development projects organized by non-native Americans like those proposed by the Plaintiffs.

10)      Defendant David Vargas and his Defendant corporations also obtained Native American grants themselves, by falsely portraying themselves as Native American or affiliated with Native Americans, and used those funds outside of their intended

purpose *ultra vires* to further finance their illicit scheme and enterprise to defraud the Plaintiffs and dozens of other similarly situated victims.

11)    Defendant Vargas and his Defendant corporations working together, mimicked logos and emblems from federally recognized tribes, tribal organizations, and supporting government agencies to falsely portray their own organizations as Native American or sanctioned by or working closely with Native American organizations and supporting government agencies to lend credence to their false claims and further lure in unsuspecting and trusting victims like the Plaintiffs.

12)    Defendants' enterprise is to promise the Plaintiffs, in bad faith and through mail and wire fraud in interstate commerce, that they can secure substantial grants and loans to fund Plaintiffs' projects knowing that they will never secure such funding. The pattern of criminal conduct that is repeated by Defendants along with their co-conspirators, agents, partners, and associates, is that Defendants obtain information from Plaintiffs and use said information to submit incomplete loan and grant applications on Plaintiffs behalf, but intentionally never complete any of the applications or obtain any funding and like a pyramid scheme continually lure in new and unsuspecting victims to continue the pattern and thereby finance the never-ending fraud.

13)    Defendants acting as grant writers and loan facilitators have consistently failed to:

a)  Research thoroughly the grants and/or loans being applied for;

b) Ensure accuracy in grant proposals and loan applications being submitted;

c) Follow all guidelines for grants and loan applications being submitted

d) Communicate clearly and openly with grant/loan applicants;

e) Maintain proper records and oversight to keep track of applications;

f) Specify all requirements of applicants including all terms, obligations, and conditions;

g) Provide clear, truthful, and open communications with applicants;

h) Provide clear and complete contracts with applicants;

i) Exercise due diligence, including ordinary skill, prudence, and knowledge of professional grant writers and loan facilitators in preparing and submitting grant and loan applications.

## Count 1
### (RICO claim of Plaintiff LWCI, LLC against all Defendants)

14) Plaintiffs incorporate each and every allegation set forth in paragraphs 1 to 13 above as if fully set forth herein.

15) On or about January 13, 2022 Plaintiff LWCI, LLC paid advance fees to Defendants in the aggregate amount of $105,000.00 on the express condition that if Defendants did not procure loans and grants in the aggregate amount of about four million dollars on or before November of 2022 then Defendants would refund 100% of the advance fees.

16) Before and after payment of the foregoing advance fees, there was a series of continuous phone calls, e-mails, and mail exchanged between Defendants, their co-conspirators, and Plaintiff LWCI over the course of about 12 months.

17) The foregoing phone calls, e-mails and mail were transmitted by Defendants and their co-conspirators repeatedly using the same phone numbers, addresses, IP addresses, and from the same computers.

18) Within the foregoing fraudulent communications made in interstate commerce, Defendants and their co-conspirators consistently claimed that they were experienced, qualified, and knew how to obtain substantial funding through grants and loans, including special access to same through their native American status, connections, and relationships, to fund Plaintiff's development projects. Defendants stated that funding was imminent if only Plaintiff could provide all of the information required by the lenders and grant providers.

19) Plaintiff LWCI immediately and consistently provided to Defendants full and accurate information in response to every request therefore to the fullest extent possible.

20) Defendants promised to apply for and obtain multiple grants and loans to achieve full funding for Plaintiff LWCI's project which was to develop a Hotel in Livermore, California with the following features and community benefits: 30 luxury guest rooms, full-service farm-to-table restaurant, and substantial guest amenities to support an overall luxury guest experience in conjunction with nearby

vineyards and wine tasting facilities to capitalize on the history and significance of Livermore, California as the leading hub of California vineyards and wine-making.

21) In fact, Defendants never fully completed a single grant or loan application and only made, at best, few initial incomplete submissions.

22) Grant applications routinely require a letter of support from the Congressperson representing the applicant's district. Over the course of about 1 year, Plaintiff LWCI's Congressperson offered to provide said letter of support for Plaintiff LWCI's grant applications but was prevented from doing so by Defendants' failure to provide the name of the grant, grant number, and grant purpose. Defendants repeatedly and continuously blamed Plaintiff LWCI for failing to provide the foregoing letter of support all the while knowing that the Congressperson could not provide same without the name of the grant being applied for as well as its grant number and purpose, which Defendants intentionally withheld and/or failed to provide.

*WHEREFORE*, Plaintiff LWCI requests an award of general damages in the amount of $ 105,000.00 against Defendants jointly and severally plus lost profits in an amount to be determined at trial.

**Count 2**
**(RICO claim of Plaintiff Pilot Automotive against all Defendants)**

23)   Plaintiffs incorporate each and every allegation set forth in paragraphs 1 to 22 above as if fully set forth herein.

24)   On or about January, 2024 Plaintiff Pilot, Inc., dba Pilot Automotive paid Defendants an advance fee in the aggregate amount of $ 30,000 cash plus title to a custom trailer demonstrating Plaintiff Pilot Automotive's humanitarian energy storage system invention with a value of $ 25,000.00.  Said advance fees and property was paid on the express condition that if Defendants failed to procure funding for Plaintiff Pilot Automotive's project in the amount of Three Million Dollars by March 2024, Plaintiff Pilot Automotive's advance fees and property would be 100% refunded.

25)   Thereafter, Defendants, on behalf of Plaintiff Pilot Automotive, made an initial incomplete application for a loan from Chino Commercial Bank.

26)   Said loan application to Chino Commercial Bank was never completed despite Plaintiff Pilot's best efforts to complete the same due to Defendants refusal and/or failure to provide information essential to its completion.

27)   Leading up to and after payment of the foregoing advance fees, there began a series of continuous phone calls, e-mails, and mail exchanged between Defendants, their co-conspirators, and Plaintiff Pilot Automotive over the course of about months.

28) The foregoing phone calls, e-mails and mail were transmitted by Defendants and their co-conspirators repeatedly using the same phone numbers, addresses, IP addresses, and from the same computers.

29) Within the foregoing fraudulent communications made in interstate commerce, Defendants and their co-conspirators consistently claimed that they were experienced, qualified, and knew how to obtain substantial funding through grants and loans to fund Plaintiff's development projects, including special access to same through their native American status, connections, and relationships, and that said funding was imminent if only Plaintiff could provide all of the information required by the lenders and grant providers.

30) Plaintiff Pilot Automotive immediately and consistently provided to Defendants full and accurate information in response to every request therefore to the fullest extent possible.

31) Defendants promised to apply for and obtain multiple grants and loans to achieve full funding for Plaintiff Pilot's project which was to replicate state-of-the-art energy storage systems per the demonstration trailer that Plaintiff Pilot Automotive had completed and given to Defendants.

32) In fact, Defendants never fully completed a single grant or loan application and only made a single initial incomplete loan submission.

*WHEREFORE*, Plaintiff Pilot Automotive requests judgment in the amount of $ 55,000.00 against the Defendants jointly and severally plus lost profits in an amount to be determined at trial.

## Count 3
### (RICO claim of Plaintiff Casa Hernandez, Inc., against all Defendants)

33) Plaintiffs incorporate each and every allegation set forth in paragraphs 1 to 32 above as if fully set forth herein.

34)  On or about November, 2022 Plaintiff Casa Hernandez, Inc., paid Defendants an advance fee in the aggregate amount of $ 100,000 cash in exchange for Defendants promise to procure a minimum of $ 400,000.00 in grant funding to enable Plaintiff to purchase an existing motel in Victorville, CA and convert said motel into affordable housing for US veterans.  Said advance fee was paid on the express condition that if Defendants failed to procure funding for Plaintiff Casa Hernandez's project within a few months, Plaintiff Casa Hernandez's advance fees would be 100% refunded.

35) Leading up to and after payment of the foregoing advance fees, there began a series of continuous phone calls, e-mails, and mail exchanged between Defendants, their co-conspirators, agents, partners, and representatives and Plaintiff Casa Hernandez over the course of about 9 months.

36) The foregoing phone calls, e-mails and mail were transmitted by Defendants and their co-conspirators, agents, partners, and representatives repeatedly using the same phone numbers, addresses, IP addresses, and from the same computers.

36) Within the foregoing fraudulent communications made in interstate commerce, Defendants and their co-conspirators consistently claimed that they were experienced, qualified, and knew how to obtain substantial funding through grants and loans to fund Plaintiff's development projects, including special access to same through their native American status, connections, and relationships, and that said funding was imminent if only Plaintiff could provide all of the information required by the lenders and grant providers.

37) Plaintiff Casa Hernandez immediately and consistently provided to Defendants full and accurate information in response to every request therefore to the fullest extent possible.

38) Defendants promised to apply for and obtain multiple grants and loans to achieve full funding for Plaintiff Casa Hernandez's project which was to convert an existing motel in Victorville, CA into affordable housing for US Veterans.

39) In fact, Defendants never fully completed a single grant or loan application on behalf of said Plaintiff and knew from the outset that they would never raise any funding whatsoever as Defendants knew there were no grants for which Plaintiff Casa Hernandez, a non-tribal member and non-tribal organization could qualify for.

WHEREFORE, Plaintiff Casa Hernandez requests judgment in the amount of $ 100,000.00 against the Defendants jointly and severally plus consequential damages in an amount to be determined at trial.

## Count 4
## (RICO claim of Plaintiff Canyon Springs Villa, LLC, against all Defendants)

40) Plaintiffs incorporate each and every allegation set forth in paragraphs 1 to 39 above as if fully set forth herein.

41)  On or about March of 2023 Plaintiff Canyon Springs Villa LLC paid advance fees to Defendants in the aggregate amount of $ 250,000.00 on the express condition that if Defendants did not procure loans and grants funding for Plaintiffs project then Defendants would refund 100% of the advance fees.

42) Leading up to and after payment of the foregoing advance fees, there began a series of continuous phone calls, e-mails, and mail exchanged between Defendants, their co-conspirators, and Plaintiff Canyon Springs.

43) The foregoing phone calls, e-mails and mail were transmitted by Defendants and their co-conspirators repeatedly using the same phone numbers, addresses, IP addresses, and from the same computers.

44) Within the foregoing fraudulent communications made in interstate commerce, Defendants and their co-conspirators consistently claimed that they were experienced, qualified, and knew how to obtain substantial funding through grants and loans to fund Plaintiff's development project, including special access to same through their native American status, connections, and relationships. Defendants stated that funding was imminent if only Plaintiff could provide all of the information required by the lenders and grant providers.

45) Plaintiff Canyon Springs immediately and consistently provided to Defendants full and accurate information in response to every request therefore to the fullest extent possible.

46) Defendants promised to apply for and obtain multiple grants and loans to achieve full funding for Plaintiff Canyon Springs project which was to develop a 48-unit Apartment complex in Cathedral City, California with the following features and community benefits: 1, 2, and 3 bedroom modern design and spacious apartments with a swimming pool, dog park, and mountain views.

47)  In fact, Defendants never fully completed a single grant or loan application and only made, at best,

 a few initial incomplete submissions.

*WHEREFORE*, Plaintiff Canyon Springs requests judgment in the amount of $ 250,000.00 against the Defendants jointly and severally plus consequential damages in an amount to be determined at trial.

### Count 5
### (RICO claim of Plaintiff AED-Copiah, LLC, against all Defendants)

48) Plaintiffs incorporate and re-allege every allegation set forth in Paragraphs 1 – 47 above as if fully set forth herein.

49)  On or about January 4, 2022 Plaintiff AED-Copiah, LLC, paid Defendants an advance fee in the aggregate amount of $ 105,000 cash in exchange for Defendants promise to procure a minimum of $ 150,000,000.00 in grant funding to enable

Plaintiff to develop a plant to produce 500,000 tons per year of wood pellets (biomass) which would then be sold and used to generate electricity in Mississippi via 4 separate grants that Defendants represented they had already procured through their special native American tribal status,  network, and relationships and simply needed to re-direct to Plaintiff AED-Copiah..  Said advance fee was paid on the express condition that if Defendants failed to procure funding for Plaintiff AED-Copiah, LLC's project within a few months, Defendants would refund Plaintiffs advance fees and/or continue to apply for additional grants and loans continuously until said funding was procured.

50) Leading up to and after payment of the foregoing advance fees, there began a series of continuous phone calls, e-mails, and mail exchanged between Defendants, their co-conspirators, agents, partners, and representatives and Plaintiff AED-Copiah, LLC wherein said Plaintiff discovered  that Defendants had never applied for any grant on its behalf other than a single USDA grant that was rejected and returned to the Defendants because it was submitted in the incorrect format and said grant application was never corrected and re-submitted.

51) The foregoing phone calls, e-mails and mail were transmitted by Defendants and their co-conspirators, agents, partners, and representatives repeatedly using the same phone numbers, addresses, IP addresses, and from the same computers.

52) Within the foregoing fraudulent communications made in interstate commerce, Defendants and their co-conspirators consistently claimed that they were experienced, qualified, and knew how to obtain substantial funding through grants and loans to fund Plaintiff's development projects, including special access to same through their native American tribal status, connections, and relationships, and that said funding was imminent if only Plaintiff could provide all of the information required by the lenders and grant providers.

*WHEREFORE*, Plaintiff AED-Copiah, LLC requests judgment in the amount of $ 105,000.00 against the Defendants jointly and severally plus consequential damages in an amount to be determined at trial

### Count 6
### (RICO claim of Plaintiff BurnFat, Inc., against all Defendants)

53) Plaintiffs incorporate and re-allege every allegation set forth in Paragraphs 1 – 52 above as if fully set forth herein.

54) On or about January 25, 2023 Plaintiff BurnFat, Inc., paid Defendants an advance fee in the aggregate amount of $ 350,000 cash in exchange for Defendants promise to procure a minimum of $ 80,000,000.00 in grant funding to enable said Plaintiff, led by its CEO Dr. Tien Vo, MD a long-time practicing physician, to purchase and improve the struggling El Centro Regional Medical Center (Hospital) located in El Centro, California.

55) Defendants represented they had already procured said funds through their special native American tribal status, Network, and relationships  (via Tribal Set Aside Funds distributed by Federal Agencies pursuant to directives from the House Appropriations Committee) and simply needed to re-direct funds to Plaintiff BurnFat Said advance fee was paid on the express condition that if Defendants failed to procure funds for the Plaintiffs project, Defendants would refund the advance fees.

56)  Leading up to and after payment of the foregoing advance fees, there began a series of continuous phone calls, e-mails, and mail exchanged between Defendants, their co-conspirators, and Plaintiff BurnFat.

57) The foregoing phone calls, e-mails and mail were transmitted by Defendants and their co-conspirators repeatedly using the same phone numbers, addresses, IP addresses, and from the same computers.

58)  Plaintiff BurnFat immediately and consistently provided to Defendants full and accurate information in response to every request therefore to the fullest extent possible.

59) Defendants promised to apply for and obtain multiple grants and loans to achieve full funding for Plaintiff BurnFat's project to purchase, improve, and operate the El Centro community hospital.

60)  In fact, Defendants never fully completed a single grant or loan application

*WHEREFORE*, Plaintiff BurnFat, Inc. requests judgment in the amount of $ 350,000.00 against the Defendants jointly and severally plus consequential damages

in an amount to be determined at trial.

## Count 7
### (RICO claim of Plaintiff K8H Ventures, LLC against all Defendants)

61) Plaintiffs incorporate and re-allege every allegation set forth in Paragraphs 1 – 60 above as if fully set forth herein.

62) On or about February 17, 2023 Plaintiff K8H Ventures, LLC, paid Defendants an advance fee in the aggregate amount of $ 250,000 cash in exchange for Defendants promise to procure grant funding to enable said Plaintiff to develop affordable manufactured housing in Texas.

63) Defendants represented they had already procured said funds through their special native American tribal status, Network, and relationships  (via Tribal Set Aside Funds distributed by Federal Agencies pursuant to directives from the House Appropriations Committee) and simply needed to re-direct funds to Plaintiff K8H Ventures.  Said advance fee was paid on the express condition that if Defendants failed to procure funds for the Plaintiffs project, Defendants would refund the advance fees.

64) Leading up to and after payment of the foregoing advance fees, there began a series of continuous phone calls, e-mails, and mail exchanged between Defendants, their co-conspirators, and Plaintiff K8H Ventures.

65) The foregoing phone calls, e-mails and mail were transmitted by Defendants and their co-conspirators repeatedly using the same phone numbers, addresses, IP addresses, and from the same computers.

66) Plaintiff K8H Ventures immediately and consistently provided to Defendants full and accurate information in response to every request therefore to the fullest extent possible.

67) Defendants promised to apply for and obtain multiple grants and loans to achieve full funding for Plaintiff K8H Venture's project.

68) In fact, Defendants never fully completed a single grant or loan application

*WHEREFORE*, Plaintiff K8H Ventures, LLC requests judgment in the amount of $ 350,000.00 against the Defendants jointly and severally plus consequential damages in an amount to be determined at trial.

## Count 8
### (Common Law Fraud claim of all Plaintiffs against all Defendants)

69) Plaintiffs incorporate and re-allege every allegation set forth in Paragraphs 1 – 68above as if fully set forth herein.

70) Among other falsehoods, Defendants repeatedly and intentionally misrepresented to Plaintiffs that they had a high success rate in obtaining grants and loans in their capacity as an officially recognized tribal organization with ready and special  access to government funds intended to assist native American tribes and their sponsored projects.

71) Defendants misrepresented successful grant applications for previous clients which did not take place.

72) Defendants misrepresented the professional qualifications of themselves and their "staff grant writers."

73) Defendants falsely claimed that grant writing fees would be refunded by the State of California upon completion of the grant applications and/or would be refunded in full if Defendants failed to procure project funding.

74) Defendants misrepresented the number of grants being applied for, the nature of the grants, Plaintiffs qualifications therefore, and the likelihood of receiving funding.

75) Defendants knowingly provided inaccurate timelines regarding the grant process.

76) Defendants repeatedly requested information from Plaintiffs, even after the requested information had already been provided. Defendant then blamed Plaintiffs for incomplete grant and loan applications, even though they knew they had already obtained the required information and/or Defendants made it impossible for Plaintiffs to provide complete information because Defendants deliberately failed to provide predicate information, such as grant numbers, purpose, and identify of issuer, which would have enabled Plaintiffs to provide needed letters of recommendation for said grants.

77) When Plaintiffs requested receipts and other documentation concerning their advance fee payments, Defendant provided false, incomplete, or misleading information as to how Plaintiff's money was being spent.

78) Defendants solicited and continued to solicit money and property from Plaintiffs while having no intention to complete the related grant and/or loan applications.

79) Defendants knew these representations were false when made, or they made the representations recklessly and without regard for the truth of the representations.

80) Defendant's misrepresentations were material. Plaintiffs would not have given any money to Defendant if not for their sincere and reasonable belief in the aforementioned misrepresentations.

81) Defendants intended to induce Plaintiffs to rely on Defendant's representations. Defendants knew that Plaintiffs would not provide money if they knew that the grant and loan applications would not be completed.

82) Plaintiffs' reasonably relied on Defendant's representations, and such reasonable reliance was a substantial factor in the damages Plaintiffs suffered, the exact amount to be proved at trial.

**Count 9**
**(Economic Negligence claim of all Plaintiffs against all Defendants)**

83) Plaintiffs incorporate and re-allege every allegation set forth in Paragraphs 1 – 82 above as if fully set forth herein.

84)  Defendants, who charged substantial advance fees for grant writing and loan application services owed each Plaintiff a duty of care, including but not limited to the following:

a)  Research thoroughly the grants and/or loans being applied for;

b)  Ensure accuracy in grant proposals and loan applications being submitted;

c)  Follow all guidelines for grants and loan applications being submitted

d)  Communicate clearly and openly with grant/loan applicants;

e)  Maintain proper records and oversight to keep track of applications;

f)  Specify all requirements of applicants including all terms, obligations, and conditions;

g)  Provide clear, truthful, and open communications with applicants;

h)  Provide clear and complete contracts with applicants;

i)  Exercise due diligence, including ordinary skill, prudence, and knowledge of professional grant writers and loan facilitators in preparing and submitting grant and loan applications.

85) FIDUCIARY DUTY.  In addition to the foregoing duty of care owed to the Plaintiffs, Defendants owed Plaintiffs fiduciary duties by virtue of partnering with Plaintiffs in many aspects that exceeded their involvement as grant writers and loan facilitators as follows: with Plaintiff AED-Copiah Defendants agreed to partner to provide lumber for a separate housing project which the

Defendants were supposedly involved with and which would enhance the

ability of Defendants to procure funding for Plaintiff's subject project; with

Plaintiff Pilot Automotive, Defendants promised to develop and sell its more

efficient battery storage invention jointly, and with Plaintiff LWCI, Defendants

promised to jointly develop EV charging stations at the site of said Plaintiffs

proposed hotel resort.

86) Defendants breached each of the foregoing duties to each Plaintiff repeatedly

and consistently.  Defendants conduct was unreasonable under the

circumstances and falls well below the standard of care owed to each Plaintiff.

87) Defendants acts and omissions were substantial factors in causing damages to

each Plaintiff.  It was foreseeable that each breach of duty owed to the

Plaintiffs would cause Plaintiffs substantial damage.

88)Plaintiffs suffered actual damages, including but not limited to, loss of all

advance fees paid to Defendants as well as lost profits due to Defendants acts

and commissions.

**Count 10**
**(Breach of Contract claim of all Plaintiffs against all Defendants)**

89) Plaintiffs incorporate and re-allege every allegation set forth in Paragraphs 1 –

88 above as if fully set forth herein.

90)Each of the Plaintiffs entered into a contract with the Defendants;

91)       Each of the foregoing contracts required the Plaintiffs to pay substantial

advance fees to the Defendants in exchange for Defendants procurement of substantial funding, through grants and/or loans, for Plaintiffs projects and that if said funding did not materialize, Defendants would refund Plaintiffs advance fees, or in some cases continue to apply for grants and loans until the desired funding was obtained.

92)    Defendants completely failed to procure any funds whatsoever for any of the Plaintiffs and refused/failed to refund any amount of the substantial advance fees paid or to continue making efforts to procure grants/loans for the Plaintiffs.

93)    Plaintiffs have suffered substantial harm as a result.

94) Defendants conduct is a substantial factor in causing Plaintiffs damages.

## Count 11
### (Negligent Misrepresentation claim of all Plaintiffs against all Defendants)

95) Plaintiffs incorporate and re-allege every allegation set forth in Paragraphs 1 – 94 above as if fully set forth herein.

96) Defendants represented to the Plaintiffs that the following facts were true, including but not limited, to the following:

a)  Defendants were members of Native American Tribal Organizations and/or CDFI or Native CDFI organizations and as such had special access to funding for grants and loans including funds appropriated by Congress to benefit Native Americans and/or their projects;

b)  That all of the Plaintiffs projects qualified to receive the foregoing special funds and that Defendants were able to procure same, and in many cases had already acquired the funds and simply needed to re-direct them, for the Plaintiffs;

c)  That Defendants employed professi9onal experienced grant writers and loan facilitators and were highly successful in procuring grant and loan funds for projects and recipients similar to those of the Plaintiffs;

d)  That Defendants possessed requisite knowledge, skills, and experience in procuring grant a and loan funds for projects similar to those of the Plaintiffs and that it was highly likely that Defendants would succeed in procuring same and if not, then Defendants would refund Plaintiffs payment of advance fees in full and/or continue making good faith and diligent efforts to acquire funding indefinitely until funding was acquired.

97) Defendants representations as described above and throughout this complaint were not true.

98) Although Defendants may honestly have believed that said facts were true, they had no reasonable grounds for believing same at the time when the representations were made.

99) Defendants intended that Plaintiffs rely upon said representations.

100)        Plaintiffs reasonably relied thereupon.

101)    Plaintiffs were harmed.

102)    Plaintiffs reliance on said representations was a substantial factor in causing them harm.

Whereupon, Plaintiffs pray for a full refund of all advance fees paid to Defendants and consequential damages in an amount to be determined at trial.

### Count 12
### (Treble Damages, Punitive Damages, and Attorney Fees
### as to all Defendants)

103)    Plaintiff incorporates each and every allegation set forth in paragraphs 1 to 102 above as if fully set forth herein.

104)    As a result of Defendant's failure to refund Plaintiffs payment of advance fees, Plaintiffs have been forced to pay attorney's fees and costs in order to bring this action to require Defendants to comply with their statutory duties.

105)    RICO entitles Plaintiffs to recover treble damages and attorney's fees incurred to collect any balance due from Defendants.

106)    Defendants engaged in conduct with malice, oppression, or fraud with an intent to cause injuries, or with willful or knowing disregard of Plaintiffs rights.

107)    Defendants took advantage of Plaintiffs financial vulnerabilities  and preyed upon Plaintiffs best intentions and efforts to develop their humanitarian projects.

*WHEREFORE*, Plaintiffs pray as follows:

a. Plaintiffs request judgment against each Defendant, jointly and severally, for general damages, treble damages, lost profits, punitives, costs, and attorney's fees.

b. Such other relief as this court deems just and proper.

Executed on December 31, 2025        LAW OFFICES OF MITCH C. WALLIS

1286 University Ave #338 San Diego, CA 92103

By /s/Mitch C. Wallis
Mitch C. Wallis
*Attorney for Plaintiffs*